UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KRISTEN BEATTIE,

                              Plaintiff,          **REPORT AND**
  -against-                                   **RECOMMENDATION**

DEBORAH FARMANIAN and JASON     20-CV-3523 (JMA) (SIL)
WILHOITE,

                              Defendants.
----------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated August 5, 2020, Plaintiff Kristen Beattie ("Plaintiff" or "Beattie") commenced this action against the Defendants Deborah Farmanian ("Farmanian") and Jason Wilhoite ("Wilhoite" and together "Defendants), alleging negligence by Defendants causing injuries Plaintiff sustained to her arm while she was a passenger during a boat ride. *See* Complaint, ("Compl."), Docket Entry ("DE") [1]. Presently before the Court, on referral from the Honorable Joan M. Azrack, is Plaintiff's motion to compel payment from her former counsel in this matter, Lawrence Wertheimer ("Wertheimer"), under their retainer agreement after the case settled. *See* Motion to Compel Payment ("Plaintiff's Motion" or "Pl. Mot."), DE [15]; *see also* Memorandum in Support of Motion to Compel Payment ("Pl. Mem."), DE [15-3]. For the reasons set forth below, the Court respectfully recommends granting Plaintiff's Motion.

**I.    BACKGROUND**

    **A. Relevant Facts**

1

The relevant facts are taken from the Complaint and the parties' submissions and are not in dispute unless otherwise noted.

On June 8, 2020, Beattie was a passenger on a boat owned by Farmanian and operated by Wilhoite, all of whom are Suffolk County residents. Compl. ¶¶ 4-7. At the time of the incident, the vessel was located in navigable waters at the Mill Creek Basin in Southampton, New York. *Id.* ¶ 9. Wilhoite was acting as the ship's mate and began lowering the bimini top, an overhead covering, when it suddenly fell on Plaintiff's arm. *Id.* Beattie suffered a complex fracture to her wrist and arm requiring surgery with internal fixation. *Id.* ¶ 12.

According to Wertheimer, Beattie is a "skilled businesswoman" who attempted to settle the matter directly with Defendants' insurance company before retaining him. Declaration in Opposition of Lawrence J. Wertheimer ("Wertheimer Decl.") ¶ 5. Beattie and Wertheimer have known each other for many years and previously worked together on contract matters related to her interior design company. *Id.* Wertheimer claims that Beattie believed this matter would settle quickly after his retention and a complaint was filed. *Id.*

Beattie hired Wertheimer and the two executed a retainer agreement. *See* Declaration of Kristen Beattie, ("Beattie Decl."), DE [15-2], ¶ 2; Wertheimer Decl. ¶ 2. The retainer is not dated, but it is signed by Beattie, and the parties do not dispute the validity of the contract's formation. *See* Wertheimer Decl. Exhibit ("Ex.") A at 1-3. The agreement provides that as consideration for the services rendered by Wertheimer's firm, Beattie would pay "[t]hirty three and one-third percent (33 1/3%)

2

of the sum recovered, whether recovered by suit, settlement or otherwise." *Id*. at 1. Beattie also checked a box in the agreement that indicated that the firm would pay for costs and expenses throughout the litigation, which would be deducted from the gross sum recovered. *Id*. at 2. Notably, for purposes of this motion, the retainer agreement contains a handwritten addendum which provides that, "If the matter settles prior to depositions the fee will be 20% of the gross recovery." *Id*. at 1. The retainer was drafted by Wertheimer, but the parties dispute who added the language. Beattie claims Wertheimer drafted the language, while Wertheimer counters that he wrote it "at the behest of Ms. Beattie." *See* Beattie Decl. ¶ 2; Wertheimer Decl. ¶ 4. Wertheimer's initials appear next to the provision, however. Wertheimer Decl. Ex. A at 1. In any event, on July 14, 2020, Wertheimer emailed Beattie prior to the handwritten modification stating, "It is understood that if this matter is settled before depositions are taken, my fee will not be 33 1/3% as stated in the retainer, it will be 20% of the gross recovery." Wertheimer Decl. Ex. B. Beattie replied on August 6, 2020 asking Wertheimer to "change the wording in the retainer agreement to add the 20% clause," and then she would sign and send it back, which she did. *Id*.

Wertheimer claims he understood that "depositions," whether singular or plural, as a point in time in the litigation, meaning before the commencement of any depositions. Wertheimer Decl. ¶ 7. Beattie asserts that she understood the language to mean that "if the case settled prior to the completion of all depositions, the fee would be 20% of the gross recovery." Beattie Decl. ¶ 2.

### B. Procedural History

3

The Complaint was filed on August 5, 2020. *See* Compl. Defendants answered on October 5, 2020, and discovery followed. *See* DEs [5]-[6]. Beattie's deposition was taken on December 22, 2020 with depositions of the defendant witnesses scheduled to be completed by January 31, 2021. Wertheimer Decl. ¶ 6. At a conference held on January 6, 2021 before the Honorable Joan M. Azrack, the parties agreed to postpone further depositions to participate in the Court's mediation process. *Id*. A mediation occurred on March 23, 2021 where the case settled for $190,000. *Id*.; DE [9]. Wertheimer claims that Beattie was notified during the mediation and prior to her agreement to settle that her share would be approximately $125,000 and not subject to income tax. *Id*. Beattie received a settlement check for $126,033.84, which deducted Wertheimer's fee at 33 1/3% after litigation expenses. Beattie Decl. ¶¶ 4-5. The parties then filed a stipulation of dismissal, which was so ordered by Judge Azrack on April 30, 2021. *See* DE [11].

Beattie retained new counsel, and on July 29, 2021 she requested a pre-motion conference arguing that Wertheimer was only entitled to 20% of the gross settlement, and filed her corresponding motion to compel payment on January 11, 2022. *See* Pl. Mot.; *see also* Reply Memorandum of Law in Support of Motion to Compel Payment, ("Pl. Reply"), DE [17]. Wertheimer opposes. *See* Memorandum of Law in Opposition to Plaintiff's Motion to Compel Payment, ("Wertheimer Opp."), DE [16-2]. Judge Azrack referred the motion to this Court on January 12, 2022, and for the reasons set forth below, the Court respectfully recommends granting Plaintiff's Motion.

**II.    LEGAL STANDARD**

## A. Jurisdiction to Hear the Motion[1]

"'It is well settled that a federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes . . . between litigants and their attorneys when the dispute relates to the main action.'" *Levitt v. Brooks*, 669 F.3d 100, 103 (2d Cir. 2012) (quoting *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 64 (2d Cir. 1991)). Several non-exhaustive factors weigh in favor of exercising ancillary jurisdiction, which include: "(1) familiarity with the subject matter of the suit, especially with the amount and quality of work performed by the attorneys; (2) a court's responsibility to protect officers of the court in such matters as fee disputes; (3) the convenience of the parties; and (4) judicial economy." *Levitt*, 669 F.3d at 104 (citing *Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc.*, 863 F.2d 251, 256 (2d Cir. 1988)). Courts commonly find fee disputes between a party and former attorney within their discretion to exercise ancillary jurisdiction including for cases that have settled. *Garcia v. Teitler*, 443 F.3d 202, 208 (2d Cir. 2006) (upholding the district court's exercise of ancillary jurisdiction to compel an attorney to return a retainer obtained to represent a party in the underlying litigation after the district court ordered the attorney to withdraw because of misconduct); *Jin Zhao v. State Univ. of N.Y.*, No. 04-CV-210, 2011 WL 3625133, at *3 (E.D.N.Y. Apr. 19, 2011) (finding court had jurisdiction to hear a fee dispute between former plaintiff's counsel and plaintiff post-settlement), *report and recommendation adopted*, 2011 WL 3610717 (E.D.N.Y. Aug. 15, 2011), *aff'd sub nom.*, *Jin Zhao v. Warnock*, 551 F. App'x 18 (2d Cir. 2014).

---

[1] The Court had original jurisdiction over this admiralty action because the accident occurred in navigable waters. 28 U.S.C. § 1333; Compl. ¶¶ 1, 9.

## B. Contract Interpretation

Terms in attorney fee agreements are analyzed under the state contract laws where executed. *E.g., Spellman v. Bankers' Tr. Co.*, 6 F.2d 799, 800 (2d Cir. 1925); *Novinger v. E.I. DuPont de Nemours & Co., Inc.*, 809 F.2d 212 (3d Cir. 1987); *Bennett v. Sinclair Nav. Co.*, 33 F. Supp. 14, 15 (E.D. Pa. 1940) (applying state law to a retainer executed in admiralty case). Under New York law, "[t]he threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." *See, e.g., Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000). Contract language is unambiguous when it has "'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355 (1978) (alteration in original)). Ambiguous language is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Revson*, 221 F.3d at 66 (citing *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (internal quotation marks omitted)). Further, equivocal contract provisions are generally construed against the drafter. *See, e.g., Albany Savings Bank, FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997) (applying New York law); *Shaw v. Mfrs. Hanover Tr. Co.*, 68 N.Y.2d 172, 176, 507 N.Y.S.2d 610, 612

(1986); *Jacobson v. Sassower*, 66 N.Y.2d 991, 993, 499 N.Y.S.2d 381, 382 (1985); *67 Wall St. Co. v. Franklin Nat'l Bank*, 37 N.Y.2d 245, 249, 371 N.Y.S.2d 915, 918 (1975) ("in cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language.").

In New York, fee agreement contracts between an attorney and a client "are scrutinized with particular care." *Shukla v. Sharma*, 586 Fed. Appx. 752, 755 (2d Cir. 2014) (quoting *Revson*, 221 F.3d at 67). An attorney who drafted a retainer agreement has the burden of showing that the contract was "fair, reasonable, and fully known and understood by the client." *E.g., Revson*, 221 F.3d at 67; *Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 838 (2d Cir. 1993); *Shaw*, 68 N.Y.2d at 176, 507 N.Y.S.2d at 612; *Jacobson*, 66 N.Y.2d at 993, 499 N.Y.S.2d at 382.

### III. DISCUSSION

Applying the standards outlined above, the Court exercises its ancillary jurisdiction to consider Plaintiff's Motion. This is a fee dispute between a party and former attorney regarding representation in this action, and this Court is familiar with the subject matter of the suit, the quality and amount of work performed by Wertheimer, and the parties agree that this Court would be the most convenient forum to address this fee dispute in the interests of judicial economy. Pl. Mem. at 1-2; Wertheimer Opp. at 1.

Further, although the parties do not specifically address this in their papers, the Court finds that New York law applies because the retainer was executed here

7

and the services at issue were performed here. Turning to the contract provision which states, "If the matter settles prior to depositions the fee will be 20% of the gross recovery," Wertheimer Decl. Ex. A at 1, the Court concludes that the language is ambiguous. On the one hand, "prior to depositions" could mean, as Wertheimer points out, prior to a particular stage of litigation, which commenced with Plaintiff's deposition. On the other hand, the phrase could mean prior to more than one deposition being taken because "depositions" is plural. To avoid ambiguity, Wertheimer could have added to the retainer agreement, "prior to *any* depositions being taken" or "prior to the commencement of depositions." He did not.

Having, therefore, concluded that an ambiguity exists, Wertheimer has failed to show that his interpretation of the language was known and understood by his client. Although the Court finds Beattie's interpretation of the provision to mean the "completion of *all* depositions" unavailing, *see* Beattie Decl. ¶ 4 (emphasis added), the Court concludes that she reasonably did not understand Wertheimer's interpretation of the language at issue. In addition, although Beattie's email suggests that Wertheimer included the language at issue at her request, Wertheimer used slightly different language from what was stated in his email to what he included in the agreement, making him the drafter of the particular language in the contract. *Compare* Wertheimer Decl. Ex. A at 1 *with* Wertheimer Decl. Ex. B. For these reasons, the language must be construed against Wertheimer who prepared the agreement, chose the particular language, and whose initials are next to the handwriting. *See* Wertheimer Decl. Ex. A at 1. Accordingly, the award should have

8

been for 20% of the settlement agreement rather than 33 1/3%, and the Court recommends granting Plaintiff's Motion, and that Wertheimer be compelled to pay the difference—13 1/3% of the settlement amount after litigation expenses.

## IV.   CONCLUSION

For the reasons set forth above, the Court respectfully recommends granting Plaintiff's Motion.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York  
　　　　May 9, 2022　　　　　　　　　　　　　 /s/ Steven I. Locke  
　　　　　　　　　　　　　　　　　　　　　　STEVEN I. LOCKE  
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge